## HARVEY *v.* LAFLIN.

Oral cotemporaneous agreements cannot be permitted to be given in evidence to control the effect of a written instrument.

*A.* owed a debt to the plaintiff and the defendant for which he executed his note to the defendant alone, and the latter, in consideration of thus holding the said note, gave the plaintiff his own note for the sum due him out of the note of *A.*, who was insolvent, and from whom the note could not be collected. *Held,* that the defendant became the owner of

May Term,
1851.

HARVEY
v.
LAFLIN.

the whole debt due by *A.*, which was a sufficient consideration to sup-
port the note made by him to the plaintiff.

When there are two issues and one is immaterial and the other valid, and
there has been a general finding for the defendant, it will be presumed
that the jury disregarded the immaterial issue, and found on that well
taken, and in such case a new trial will not be granted.

If a charge given to the jury would be correct if certain evidence were
given, this Court will presume that such evidence was given, the record
not showing the contrary.

Tuesday,
May 27.

ERROR to the *Union* Circuit Court.

SMITH, J.—Assumpsit upon a note, or due bill, dated
*January* 12th, 1846, for the payment of 295 dollars on or
before the 8th of *March* next ensuing.

The defendant filed five pleas.    1st. The general
issue; 2d. Payment; 3d. No consideration; 4th. A gen-
eral plea of fraud.

The 5th was a special plea intended to show that the
note was given without consideration.    It alleged that on
the 4th of *January*, 1846, the plaintiff and defendant were
joint owners of a lot of hogs, which they drove to the town
of *Hamilton, Ohio,* and sold to one *McClary*, on a credit, for
1,100 dollars, to be paid on the 8th of *March*, 1846.   For
the payment of that sum *McClary* made his note drawn
in favor of the defendant alone, but for the benefit of
both the plaintiff and defendant.    Afterwards, on the
12th of *January*, 1846, the plaintiff and defendant, on set-
tling their partnership accounts, ascertained there would
be due to the plaintiff, out of the sum thus owed by *Mc-
Clary*, 295 dollars; and, thereupon, for the purpose of
furnishing the plaintiff with evidence of the interest thus
held by him in the *McClary* note, and for no other pur-
pose, the note described in the declaration was given,
with the understanding that it was to be paid only when
the debt due from *McClary* was collected.    It is then
averred that the defendant used due diligence to collect
the debt due by *McClary* but without effect; that his note
remains unpaid; and that *McClary* now is, and has been
ever since the note was executed, notoriously insolvent.

To this plea there was a replication, alleging that at
the time the hogs were sold to *McClary*, the plaintiff was

dissatisfied with the defendant for taking the note payable to himself alone, and thereupon, the defendant agreed in consideration of the note of *McClary* being made payable to him, that he would, when he and the plaintiff returned home to *Union* county, execute his own note for the balance due to the plaintiff; and that, afterwards, on the 12th of *January*, 1846, the plaintiff and defendant, having had a settlement of their partnership adventure, the said note in the declaration mentioned was executed by the defendant to the plaintiff for the balance due him on said transaction, and in fulfilment of the aforesaid agreement. The replication concluded with a verification.

The defendant rejoined, that he did not agree to take the note of *McClary* on his own responsibility and run the risk of its collection, but it was taken for the benefit of the firm.

The rejoinder tendered an issue to the country which the plaintiff accepted, and this, with the other issues, was tried by a jury, who found a verdict for the defendant. A motion for a new trial was overruled, and final judgment was rendered.

The plaintiff complains of the instructions given to the jury. They were as follow:

1st. The mere fact of taking the note in *Laflin's* name from *McClary*, for the sum due to the plaintiff and defendant as partners, did not make *Laflin* liable for the sum due to the plaintiff, unless the money had been collected on the note;

2d. That, in order to have made *Laflin* liable for the note in the declaration mentioned, he ought to have taken upon himself the responsibility of collecting the debt from *McClary*, and to have run the risk of the collection of the same, but if he did not so take the risk of the collection of the debt from *McClary*, the note in the declaration mentioned was given without consideration;

3d. If, after the sale of the hogs to *McClary*, the defendant took *McClary's* note for the balance due, and then settled with the plaintiff and for the plaintiff's in-

terest in the *McClary* note so sold to the defendant, that would be a good consideration for the note sued upon.

If the 5th plea was a bar to the suit, as showing that the note was given without consideration, the proper replication would have been a direct traverse denying that the note was given without consideration in manner and form, &c., concluding to the country. This would have imposed upon the defendant the necessity of proving the material averments of his plea. But instead of filing such a replication, the plaintiff replies by stating certain facts, going, as he supposes, to show that the note in suit was given for the plaintiff's interest in the *McClary* note, and that the defendant undertook to collect the latter note on his own responsibility; concluding with a verification. The defendant then rejoins that he did not take the *McClary* note on his own responsibility; and concludes to the country. The issue thus made up narrows down the controversy to the question whether the defendant did or did not take the *McClary* note on his own responsibility, and throws the burden of proof upon the plaintiff.

In the second instruction above quoted, the Court told the jury that unless the defendant specially agreed to assume the risk of collecting the debt due from *McClary*, he would not be liable to the plaintiff for the debt sued for, and this was precisely what the plaintiff undertook to prove upon joining the issue tendered by the rejoinder.

The 5th plea is, however, bad; and the issue which it led to was immaterial. It is a well established rule, that oral cotemporaneous agreements cannot be permitted to be given in evidence to control the effect of a written instrument, and the cases are numerous in which this rule has been applied where, in suits upon notes payable unconditionally, attempts have been made to prove agreements that they were to have been paid only on condition, or on the happening of certain contingencies. *Mahon* v. *Sherman*, 7 Blackf. 378.—*Underwood* v. *Simonds*, 12 Metc. 275.—*Adams* v. *Wilson*, id. 138.—*McClanaghan* v. *Hines*, 2 Strobh. L. R. 122.

The only question that can arise upon this plea is, whether, disregarding all the averments of a collateral agreement or agreements as mere surplusage, the plea states enough to show that the note sued upon was given without consideration.

Stripped of this surplusage, then, the plea amounts to this: that *McClary* owed a debt to the plaintiff and the defendant for which he had executed his note to the defendant alone, and the defendant, in consideration of thus holding the note of *McClary*, gave the plaintiff his own note for the sum due the latter out of the *McClary* debt, and that *McClary* was insolvent and his debt could not be collected. By this arrangement the defendant assumed, in legal effect, the risk of collecting the *McClary* debt. He held the legal title to it, and the trust held by him for the plaintiff was extinguished by giving his own note. He therefore became the owner both at law and in equity of the whole debt due by *McClary*, and that was a sufficient consideration to support the note made by him to the plaintiff. The averment that *McClary* was insolvent does not help the plea. If *McClary* was notoriously insolvent at the time the note was made, as the plea alleges, that fact must have been known to the defendant, and having agreed, notwithstanding, to purchase the interest of the plaintiff by giving his own note, it cannot be said his contract was, by reason of *McClary's* insolvency, without consideration. An insolvent man may become solvent, and there might be many reasons why the note of even an insolvent person would be considered valuable by a purchaser.

The defendant then committed the first fault in the pleadings which led to this immaterial issue and obtained a verdict. Had there been no other issue, the plaintiff, under these circumstances, would have been entitled to a new trial, irrespective of any errors in the instructions. *Ramsey* v. *Kochenour*, 8 Blackf. 325. But where, as in the present case, there are other issues besides an immaterial one, and there has been a general finding for the defendant, the evidence not being upon the record, it seems to

be the general practice to refuse the granting of a new trial upon the application of the plaintiff; on the ground that it will be presumed the jury disregarded the immaterial issue, and found for the defendant on one or more of those well taken. *The State* v. *Hood*, 7 Blackf. 127.

With regard to instructions, it is a rule that if they would be correct under any state of evidence which might have been given, it will be presumed that such evidence was given, the record not showing the contrary. *Abrams* v. *Smith*, 8 Blackf. 95. We cannot say there could not, possibly, have been evidence given under some of the pleas to which the instructions given in this case would have been applicable, and we have' had strong doubts whether we could, consistently with this rule, reverse the judgment on the ground that the Court gave erroneous instructions to the jury.

From the tenor of the instructions, however, they appear to have been given with direct reference to the immaterial issue, and we also gather from the briefs of the counsel, that the whole case turned in the Court below upon the finding as to that issue. We think, therefore, the presumption that the jury found for the defendant on the good issues is sufficiently removed, and as a different decision would put a final end to the plaintiff's right of action, and there is at least a strong probability that his failure was owing to the mistakes in the pleadings and the consequent misdirection of the Court, we shall reverse the judgment and remand the cause for a new trial, but there will be no judgment for costs in this Court.

*Per Curiam.*—The judgment is reversed without costs.

*J. S. Reid*, for the plaintiff.

*J. Perry* and *J. Yaryan*, for the defendant.